KERN TRADING & OIL CO. et al. v. ASSOCIATED PIPE LINE CO. et al.

(District Court, N. D. California, S. D. September 14, 1914.)

No. 35.

1. COURTS (§ 508*)—JURISDICTION OF FEDERAL COURT OF EQUITY—ENJOINING ACTION BY STATE COMMISSION.

A federal court of equity will not enjoin a state commission from taking action against a corporation under a statute of the state, on the ground that such action will be a violation of the corporation's constitutional rights, where the statute gives it the right to have any action by the commission reviewed by the highest court of the state, unless some exceptional necessity is shown.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1423, 1425–1430; Dec. Dig. § 508.*]

2. CONSTITUTIONAL LAW (§ 247*)—COURTS (§ 508*)—DENIAL OF "EQUAL PROTECTION OF THE LAW"—EXCESSIVE PENALTIES FOR EXERCISE OF LEGAL RIGHT—JURISDICTION OF FEDERAL COURTS—ENJOINING ACTION BY STATE COMMISSION.

In such case, however, where the statute also subjects the corporation and its officers and employés to such excessive and cumulative penalties for disobedience of the orders of the commission as to deter it from exercising its right of legal review, a federal court will enjoin enforcement of such provisions pending the legal proceedings, on the ground that they are unconstitutional, as denying the corporation the equal protection of the laws.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 703; Dec. Dig. § 247;* Courts, Cent. Dig. §§ 1418–1423, 1425–1430; Dec. Dig. § 508.*

For other definitions, see Words and Phrases, First and Second Series, Equal Protection of the Law.]

In Equity. Suit by the Kern Trading & Oil Company and the Associated Oil Company against the Associated Pipe Line Company, Ulysses S. Webb, Attorney General of the State of California, John M. Eshleman, Harvey D. Loveland, Alex. Gordon, Edwin O. Edgerton, and Max Thelen, constituting the Railroad Commission of the State of California, and Max Thelen, attorney for the Railroad Commission of the State of California. On motion for preliminary injunction. Granted in part.

Stanley Moore, Edmund Tauszky, and Henley C. Booth, all of San Francisco, Cal., for plaintiffs.

Max Thelen, of San Francisco, Cal., U. S. Webb, Atty. Gen. of California, and R. Benjamin and Douglas Brookman, both of San Francisco, Cal., for defendants.

Before GILBERT and MORROW, Circuit Judges, and DOOLING, District Judge.

DOOLING, District Judge. This is a bill in equity seeking to enjoin the defendant Associated Pipe Line Company from obeying, and the other defendants from enforcing, the so-called pipe line acts passed by the Legislature of the state of California at the session of 1913, and approved on June 4th of that year. The present proceeding is an

application for a temporary injunction. It appears from the bill, which is very voluminous, that the plaintiff corporations are the owners, each owning one-half, of all the stock of the defendant Associated Pipe Line Company; except a few shares, which are held by the directors of said defendant, for the purpose of enabling them to become such. The Associated Pipe Line Company is the owner of, and is operating, two pipe lines for the transportation of oil from the oil fields of California to Port Costa. One of these lines, known as the "rifled-pipe line," extends from Volcan, in the Kern River oil field, of Kern county, to Port Costa, in the county of Contra Costa, and is approximately 280 miles in length. For most of this distance it is laid along the right of way of the Southern Pacific Railroad Company and the Central Pacific Railway Company. The other line, known as the "hot line," extends from Port Costa, through the Coalinga, the McKittrick, and other oil fields, to Maricopa, in the Sunset Midway oil field of Kern county, a distance of 278.44 miles. From Port Costa to Mendota, a distance of 140.06 miles, this line is laid along the Southern Pacific Railroad right of way, and from Mendota to Maricopa along a pipe line right of way belonging to the defendant Associated Pipe Line Company, of which no portion was acquired by the exercise of the right of eminent domain. Each line crosses a number of public highways. All of the railroad rights of way mentioned are, by agreements with the Southern Pacific Railway Company and the Central Pacific Railway Company, under the control of and in use by the Southern Pacific Company, a third railroad corporation, which is engaged in interstate and intrastate transportation as a common carrier, and which owns all the stock of the other two, except a few shares held by the directors of each. Plaintiff Kern Trading & Oil Company was incorporated in 1903 by the Southern Pacific Company as its agent and instrumentality for the purpose of developing, handling, and furnishing to it fuel oil for its locomotives. The Southern Pacific Company also owns all the stock of the Kern Trading & Oil Company, except 25 shares held by the directors of the latter. The Kern Trading & Oil Company does not sell and has never sold any oil commercially, but all of the oil developed or acquired by it is and has been devoted to the use of the Southern Pacific Company for its railroad purposes. The Southern Pacific Company has advanced all the moneys, in amount more than $9,000,000, necessary for the Kern Trading & Oil Company, and all of the oil handled by the latter has been developed upon lands owned or controlled by the former. In 1907 the Kern Trading & Oil Company entered into a contract with its coplaintiff, Associated Oil Company, for the incorporation of defendant Associated Pipe Line Company, which is an operating company, for the construction and operating of oil pipe lines for the transportation of oil belonging to the other two companies, but not as a common carrier. The Associated Pipe Line Company was incorporated pursuant to this agreement, which also provided that the pipe lines constructed by it should be used exclusively for the movement of oil belonging to the other two companies in the proportion of their ownership of its stock. The capacity of the pipe lines of the defendant Associated Pipe Line Company is 38,000 barrels, of 42 gallons each, per day. Of this quantity 19,000 barrels

are transported for plaintiff Kern Trading & Oil Company for the use of the Southern Pacific Company, and 19,000 barrels are transported for the plaintiff Associated Oil Company, and sold by said plaintiff in this and other states and in foreign countries. Neither of the plaintiffs purchases any oil, but each develops the oil so transported upon its own lands, or upon lands under its control. These, broadly speaking, are the relations existing between the plaintiffs, and among the plaintiffs, the defendant Associated Pipe Line Company, and the Southern Pacific Company, as disclosed by the bill. The defendant U. S. Webb is the Attorney General of the state of California, and the defendants John M. Eshleman, Harvey D. Loveland, Alex. Gordon, Edwin O. Edgerton, and Max Thelen are the members of the Railroad Commission of said state; the defendant Max Thelen being also attorney for such commission. The Railroad Commission exercises its powers pursuant to the public utilities act, approved December 23, 1911, which provides, among other things:

That such commission is vested with power and jurisdiction to supervise and regulate every public utility; that it is the duty of the commission to see that the provisions of the Constitution and statutes affecting public utilities are enforced and obeyed, and violations thereof promptly prosecuted, and penalties due the state therefor recovered and collected; and that all penalties accruing under the act shall be cumulative, and the recovery of one penalty shall not be a bar to or affect any other penalty or forfeiture, or be a bar to any criminal prosecution against any public utility, or against any officer, director, agent, or employé thereof, or any other corporation or person, or be a bar to the exercise by the commission of its power to punish for contempt. It also provides that any public utility violating or failing to comply with any provision of the Constitution or of the act itself, or failing to obey any order, decision, decree, rule, direction, demand, or requirement of the commission, is subject to a penalty of not less than $500 nor more than $2,000 for each offense, and that every violation of the provisions of the act, or of any order, decision, decree, rule, direction, or requirement of the commission, or any part or portion thereof is a separate and distinct offense, and in case of a continuing violation each day's continuance thereof shall be and be deemed to be a separate and distinct offense. The act, omission, or failure of any officer, agent, or employé of any public utility, acting within the scope of his employment, is to be deemed the act, omission, or failure of such public utility. The officer, agent, or employé failing to obey any of the provisions of the act, or any order of the commission, is also guilty of a misdemeanor, and punishable by a fine not exceeding $1,000, or by imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment. In addition to these penalties the public utility and its agents are further liable to punishment for contempt. The act also provides that the commission may direct its attorney to bring an action in the superior court to have threatened violations of the requirements of the law or of the orders of the commission prevented, either by mandamus or injunction, and that appeals may be had to the Supreme Court of the state from any final judgment entered in such action. It is also made the duty of the Attorney Gen-

eral, and of the various district attorneys, upon the request of the commission, to aid in any investigation, and to prosecute actions for the enforcement of the Constitution and statutes affecting public utilities, and for the punishment of all violations thereof.

The so-called pipe line acts are three several acts passed, as stated, by the Legislature at its regular session in 1913, and all approved on the same day, June 4th, and being chapters 327, 285, and 286 of the Acts of 1913 (St. 1913, pp. 657, 523, 532). The first of these (chapter 327), known as the "declaratory act," declares to be a common carrier, and subject to the provisions of the public utilities act, every private corporation and every individual or association of individuals owning, operating, managing, or controlling any pipe line for the transportation of crude oil or petroleum, either directly or indirectly, to or for the public for hire, or consideration of any kind, or engaged directly or indirectly in the business of so transporting the same, or owning, operating, managing, or controlling any such pipe line for the transportation of oil, directly or indirectly to or for the public for hire, compensation, or consideration of any kind paid or received directly or indirectly for such transportation, and which line is constructed or maintained upon, along, over, or under any public highway, and in favor of whom the right of eminent domain exists, or which is constructed or maintained across, upon, along, over, or under the right of way of any railroad corporation or other common carrier required by law to transport oil as a common carrier, or owning or controlling or participating in the control of any pipe line by which is secured or attempted to be secured, or which attempts or tends to secure the control of, or monopoly of the purchasing of, or control of, or monopoly of the transportation of crude oil or the products thereof; also every corporation organized or existing under the laws of the state of California, or of any other state, to transport or engage in the business of transporting in California any crude oil or petroleum, or for the purpose of acquiring, constructing, leasing, owning, maintaining, or operating, directly or indirectly, or controlling or participating in the control of any pipe lines, maintained for the transportation of crude oil or petroleum, actually engaged or engaging in such operation or transportation, directly or indirectly, or shares, directly or indirectly, in the business of such operation or transportation. The act further declares any pipe line constructed, acquired, owned, operated, maintained, managed, or controlled for any of the foregoing purposes or under any of the foregoing conditions to be a public utility, and subject to the provisions of the public utilities act.

The second of the pipe line acts (chapter 285) declares to be illegal any contract, combination, arrangement, or conspiracy between a common carrier railroad operating from any oil-producing field, for a distance of 35 miles or more, to any refinery, or to or through any selling or marketing point, and any oil pipe line transporting crude oil, otherwise than as a common carrier, from the same oil-producing fields for a distance of 35 miles or more, to or through the same refining, selling, or marketing points, and which last transportation is accomplished in whole or in part by such oil pipe line, and whereby such pipe line secures, or is enabled to secure, or attempts or tends to secure, any un-

reasonable control or monopoly of the purchase, sale, or transportation of such oil, or is enabled to secure, or attempts to secure, any unreasonable restraint on or over competition or trade in the purchase, sale, or transportation of such oil. The act further declares that in every action or proceeding thereunder, when it shall appear to the court that any such arrangement exists, and that the pipe line is constructed in whole or in part along the right of way of such common carrier railroad for the distance of five or more miles with the consent of such railroad, and whether or not the pipe line is owned or controlled directly or indirectly by such railroad, or whether or not such railroad and pipe line have any common or interlocking owner or owners, or director or directors, and it further appears that such line is engaged in the business of buying, transporting, and reselling such oil, or of buying and transporting the same, or of providing, transporting, and reselling the same, or of producing and transporting the same, and it further appears that the schedule of rates for the transporting of such crude oil filed by said railroad with the Railroad Commission, or published, fixed, or charged by such railroad, are sufficiently high as compared with the actual cost of transportation of such oil by such pipe line as to tend to prevent the transportation of such oil over or upon such railroad, or to tend to prevent competition between such railroad and such pipe line, or to restrain competition among the producers of such oil, or to tend to enable such pipe line to restrain competition in the sale or purchase of such oil among the producers or consumers thereof, or to tend to enable such pipe line to secure the control or the monopoly of the purchase of such oil, or to fix the selling price thereof at the oil fields, or to secure the control or monopoly of the transportation of such oil from such oil fields, then such arrangement or combination is declared to be an unfair practice, and the same must be deemed by such court to be an unreasonable contract, combination, arrangement, or conspiracy in restraint of trade, and the same shall and must be deemed illegal. The act further provides that every person who hereafter makes, or who continues to execute, any such agreement, without having procured a license as provided in the act, shall be deemed guilty of a misdemeanor, and punished by a fine not exceeding $5,000, or by imprisonment not exceeding one year, or by both such fine and imprisonment. The superior courts are given jurisdiction to prevent and restrain violations of the act, and it is made the duty of the several district attorneys and of the Attorney General to institute proceedings to prevent and restrain such violations. The right is also given to any person injured in his business or property by any violation of the act to sue in the superior court and recover threefold the damages sustained by him, with costs and attorney's fee. The act further provides that every pipe line used or operated for the transportation of oil under the above conditions, and not as a common carrier, must within 30 days either file with the Railroad Commission its written consent to transport oil for the public and as a common carrier, together with its schedule of rates for such transportation in accordance with the provisions of the public utilities act, or, failing to do this, must either cease to transport oil other than as a common carrier, or must procure a license from the secretary of state

permitting it to transport oil other than as a common carrier, and its failure to comply shall subject it to the penalties herein specified. A fee of $250 must be paid to the secretary of state at the time of procuring such license, and thereafter monthly such pipe line must pay to the state of California the sum of 50 cents for each barrel of oil transported through such pipe line, which sums are made a lien upon the line. Every pipe line, and every agent, attorney, or employé of the same, failing to comply with any of the provisions of the act, or failing to observe or obey any order, rule, direction, demand, or requirement of the Railroad Commission, is guilty of a misdemeanor, and punishable by fine not exceeding $5,000, or by imprisonment in the county jail not exceeding one year or by both such fine and imprisonment.

The third pipe line act (chapter 286) provides that every corporation, individual, or association owning, operating, managing, or controlling any pipe line for the transportation of crude oil, or engaged directly or indirectly in the business of transporting by pipe lines crude oil or petroleum, or any of the products thereof, from producing points to any marketing point, for an aggregate distance of 35 or more miles, not as a common carrier, and which pipe line is constructed or maintained for any distance whatsoever across, along, over, or under any public highway or public road is required, within 20 days, before continuing to transport such oil through any part of such pipe line for any distance whatsoever across, along, over, or under any public highway or public road, to procure a license from the secretary of state permitting the continuance of such transportation of oil through such part or parts of such pipe line as is constructed or maintained for any distance whatsoever across, along, over, or under any public highway or public road. The amount to be paid for such license, and the monthly amounts to be paid thereafter, are the same as those provided for in chapter 285, hereinbefore set out. The other provisions of the act, in so far as material here, are substantially the same as those above set forth, except that the fine for violations is not to exceed $1,000, instead of $5,000.

The constitutionality of these pipe line acts, which contain many other provisions not necessary to be noted here, is challenged by the bill on a number of grounds, and the action is brought by the plaintiff corporations, as stockholders of defendant Associated Pipe Line Company, which company, the bill avers, has declared its intention to conform to the said acts, for the reason that it and its directors are deterred by the severe penalties imposed from contesting the same. This method of procedure is in accord with the principles laid down in Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764, which determines, as correctly stated in the syllabus:

"A bill by stockholders of a railroad company to enjoin it from complying with a statute relating to rates sufficiently sets out the reason for their commencing it and making the company a party defendant by alleging that they had demanded of the corporate officers that they refuse obedience to the statute, and should institute suits to prevent its enforcement, but that the company and its officers had positively refused to do so, not because they considered the rates just, or that they would not be confiscatory, but because of the severity of the penalties provided for violation of the statute, to the

ruinous consequences of which they would not subject themselves, and which no action by themselves, their stockholders or directors, could avoid.

"Whether or not a railroad company is deprived of the equal protection of the laws, and its property rendered liable to be taken without due process of law, by a state statute providing for the establishment of rates of transportation, because the penalties fixed for violation of the statute are so enormous as to require obedience to the law rather than risk the penalties in testing it, although such obedience might, in the end, result in confiscation of the railroad property, is a federal question, within the jurisdiction of the * * * United States courts."

Such "a statute, * * * which fixes penalties for disobedience of its provisions by fines so enormous and imprisonment so severe as to intimidate the corporations and their officers from resorting to the courts to test the validity of the rates, is unconstitutional, as depriving the corporations of the equal protection of the laws."

The cumulative penalties provided for failure to obey the provisions of these various acts, and the enormous license fees required as a condition precedent to the right of a pipe line company falling within their terms to continue to operate other than as a common carrier, bring this case within the foregoing principles.

[1] It is urged by the defendants other than the defendant Associated Pipe Line Company that no temporary injunction should be granted, but that the bill lacks equity, and should be dismissed, because the only action which the bill discloses to be threatened by them is an investigation on the part of the Railroad Commission to ascertain whether or not the defendant Associated Pipe Line Company comes within the provisions of chapter 327 or so-called declaratory act, and that it does not show any contemplated action on their part under either of the so-called license acts, being chapters 285 and 286.

The bill avers that on August 11, 1913, the day after the so-called pipe line acts became effective, the Railroad Commission upon its own motion instituted an investigation to ascertain what corporations, associations, and individuals are subject to the provisions of the act known as chapter 327, or declaratory act, and that it issued an order to a number of corporations, including the defendant Associated Pipe Line Company, to show cause on September 4, 1913, why the said commission should not make its order requiring each of said companies to file with the commission schedules of their rates and charges for the transportation of crude oil and petroleum, or the products thereof, and their rules and regulations in connection with such transportation, and otherwise to comply fully with said chapter 327 of the Laws of 1913. This is the only really threatened action which the bill discloses, and is taken under the provisions of the public utilities act, to which provisions the oil pipe lines described in chapter 327 are made subject. The public utilities act (St. 1911, Extra Sess. p. 54), in section 66, provides that, after any order or decision has been made by the commission, any party to the proceeding, or any stockholder or bondholder or other party pecuniarily interested in the public utility affected, may apply for a rehearing, and the commission may grant and hold such rehearing, if in its judgment sufficient reason therefor be made to appear. Section 67 of said act contains the following provisions:

"Within thirty days after the application for a rehearing is denied, or, if the application is granted, then within thirty days after the rendition of

the decision on rehearing, the applicant may apply to the Supreme Court of this state for a writ of certiorari or review  *  *  *  for the purpose of having the lawfulness of the original order or decision or the order or decision on rehearing inquired into and determined.  *  *  *  The review shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the Constitution of the United States or of the state of California."

In Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150, the Supreme Court held to have been prematurely brought an action by certain railroad companies to restrain the Virginia State Corporation Commission from enforcing certain passenger rates fixed by it; the reason being that the railroad companies had not availed themselves of the right which they had, to appeal to the Supreme Court of Virginia from the order of the commission establishing such rates, and in this connection the court says:

"The state of Virginia has endeavored to impose the highest safeguards possible upon the exercise of the great power given to the State Corporation Commission, not only by the character of the members of that commission, but by making its decisions dependent upon the assent of the same historic body that is intrusted with the preservation of the most valued constitutional rights, if the railroads see fit to appeal. It seems to us only a just recognition of the solicitude with which their rights have been guarded that they should make sure that the state  *  *  *  would not respect what they think their rights to be, before resorting to the courts of the United States."

And Mr. Chief Justice Fuller in a vigorous opinion in the same case uses the following language:

"In my opinion, a preliminary objection is fatal to the maintenance of these bills. It appears on their face that the appellees did not avail themselves of the right of appeal to the Court of Appeals of Virginia, which was absolutely vested in them by the Constitution and laws of that commonwealth. Such an appeal would have brought up the question of the alleged unreasonableness of the designated rate, and appellees cannot assume that the decision of the commission would necessarily have been affirmed. If reversed or changed to meet appellees' views, the whole ground of equity interposition would disappear. In such circumstances it is the settled rule that courts of equity will not interfere. The transaction must be complete, and jurisdiction cannot be rested on hypothesis. A fortiori this must be so where federal courts are asked to interfere with the legislative, executive, or judicial acts of a state, unless some exceptional and imperative necessity is shown to exist."

[2] If there be any exceptional and imperative necessity existing in the case at bar, it arises from the excessive penalties and fees, which deter the defendant Associated Pipe Line Company from testing in the ordinary way, and through the channels, provided by the public utilities act and the pipe line acts themselves, the constitutionality of such of these acts as is drawn in question here. If it were not for these penalties and fees, and the fear inspired by them in the defendant Associated Pipe Line Company and its directors, the present plaintiffs would not be entitled to sue here at all. This court should be called upon to interfere with the action of officers of the state only at such time and to such an extent as is necessary to secure the guaranties of the Constitution, and of the laws enacted in pursuance thereof. Under all the circumstances the measure of relief accorded to the plaintiffs here should not exceed the right upon which it is based.

For this reason, and having in mind the principles hereinbefore stated, they will have secured everything to which they are entitled at this time, if the defendant Associated Pipe Line Company and its directors be relieved of the dread under which, as is averred, they are constrained to refrain from testing the validity of the pipe line acts, through the methods provided in the public utilities act, in the pipe line acts themselves, and in the Constitution and laws of the state of California. No further relief can be based upon the present bill; nor is this court disposed to interfere with the state or its officers to any greater extent than, as above stated, is necessary to secure the constitutional guaranties. The bill, therefore, will not be dismissed, but jurisdiction of the subject-matter and of the parties will be retained, and an injunction will issue enjoining the defendants, other than the Associated Pipe Line Company, from enforcing or attempting to enforce against said last-named defendant, or any of its agents or employés, any of the penalties provided in the public utilities act, or in any of the so-called pipe line acts, and from collecting or attempting to collect from said defendant any of the license fees, other than the primary fee of $250 provided for in any of said acts, which penalties or fees shall have accrued or may accrue at any time before the validity of said pipe line acts shall have been finally passed upon by the courts of the state of California. The defendant Associated Pipe Line Company will not be enjoined from complying with said acts; but, being thus set free from the dread under which it claims to have been resting, it and its directors may pursue such course as to them may seem best.